UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT GARZA | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00253 |
| | § | |
| CITY OF CLEAR LAKE SHORES, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM AND ORDER

Plaintiff Robert Garza brings this action under Title VII of the Civil Rights Act and 42 U.S.C. § 1983 alleging that Defendants City of Clear Lake Shores and Paul Shelley, the City Administrator and Police Chief, discriminated against him because he is Hispanic. Garza, a former police officer for the City, alleges that Defendants terminated him for false reasons in 2006 and replaced him with an Anglo officer.  Defendants seek dismissal on statute of limitations grounds because Garza's termination occurred six years before he filed suit.   Despite Garza's allegation that the City deceived him regarding the circumstances surrounding his termination, the Court concludes he nevertheless had reason to be suspicious of the motives behind his termination—and admittedly was suspicious—at the time of his termination.   Accordingly, equitable tolling of the limitations period is unwarranted and the motion to dismiss is **GRANTED**.

## I.   BACKGROUND

On June 26, 2006, Garza started working for Clear Lake Shores Police Department as a full time police officer.[1]  Docket Entry No. 1 ¶ 8.  He was awarded "Rookie Officer of the Year" on the basis of his work product and ethic.  *Id*.   Soon after receiving the award, in December of 2006, Police Chief Paul Shelley requested his resignation.  *Id*.  According to Garza, Shelley based the request on an unspecified policy violation.  *Id*.  Garza refused to resign, and Shelley issued a Report of Separation of Licensee, in which Shelley claimed that Garza resigned prior to an Internal Affairs investigation regarding an unspecified policy violation. *Id*.  Shelley reported that Garza had been issued a General Discharge, which is more severe than an Honorable Discharge and has purportedly prevented Garza from obtaining a subsequent law enforcement position.  *Id*.

In his complaint, Garza claims that the Police Department discriminated against him and other Hispanic officers by, among other things, assigning preferential shifts to Anglo officers and terminating Hispanic officers for conduct common among their Anglo counterparts.  *Id.* ¶ 12.  Garza alleges that it was after complaining to management about this treatment that he was "subsequently and repeatedly harangued, undermined, refused workplace benefits, and ultimately terminated."  *Id*. ¶¶ 19–20.  Garza further contends that the City and Police

---

[1] The City of Clear Lake Shores, population 1,205, is located between Kemah and League City outside of Houston on Galveston Bay.

Department did not follow the guidelines set out in their policy manual and replaced him with an Anglo employee. *Id.* ¶¶ 15–16.

After his discharge, Garza repeatedly demanded that the City provide "the identity, source and contents of the alleged complaint, complainant and policy violation." *Id.* ¶ 9.   According to Garza, the City refused his demands for information by claiming that the Texas Attorney General instructed that the information was secret and not subject to the Texas Open Records Act or a federal Freedom of Information Act request. *Id.*

Years later, in 2011, the City ordered an independent audit focusing on the Police Department and Shelley. *Id.* ¶ 10.  In 2012, Garza received the findings of the investigation and learned that the Attorney General had not only never advised the City or Police Department that they could not respond to Garza's request for information, but that they had never even been contacted concerning the matter. *Id.* Soon after, Garza filed a charge of discrimination with the Equal Employment Opportunity Commission, and then this lawsuit.

## II.   RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr.*

*Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling . . . ." *Jones v. Alcoa, Inc.*, 330 F.3d 359, 366 (5th Cir. 2003).

## III.  ANALYSIS

### A.  Alleged Discriminatory Acts Occurred Outside the Limitations Period

The first issue is whether the statute of limitations began running in 2006, when Garza was terminated, or in 2012, when he learned that the Attorney General had never advised Defendants to withhold information regarding his termination.

The alleged discriminatory act is Garza's termination, which undisputedly took place in December 2006. Docket Entry No. 1 ¶ 8. Garza filed his charges with the EEOC in 2012 and subsequently brought this action. *Id.* ¶ 11. The Fifth Circuit takes the position that "the limitations period starts running when the plaintiff knows of the discriminatory *act*, not when the plaintiff perceives a discriminatory motive behind the act." *Miller v. Potter*, 359 F. App'x 535, 536 (5th Cir. 2010) (per curiam) (emphasis in original) (quoting *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n. 2 (5th Cir. 1992)).

As a prerequisite to filing suit, a plaintiff bringing a Title VII discrimination claim has 300 days from the time the discriminatory employment action occurred to

file a charge with the EEOC. *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007); *see also Vaughn v. Univ. of Hous.*, No. H-05-2539, 2008 WL 656512, at *4 (S.D. Tex. Mar. 6, 2008). For a section 1983 claim, federal courts look to the appropriate state's law to determine the statute of limitations, which in Texas is two years. *See Rubin v. O'Koren*, 644 F.2d 1023, 1025 (5th Cir. 1981); *Piotrowski v. City of Hous.*, 51 F.3d 512, 515 n.5 (5th Cir. 1995); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). While state law determines the limitations period for section 1983, federal law dictates that the limitations period begins to run when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002) (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir. 1987)).

The fact that Garza did not learn until 2012 that the City was using a false reason for withholding information regarding his termination does not determine when the limitations period commenced. Because courts look to when the act occurred, not to when there was reason to suspect illicit motives behind the act, Garza's Title VII and section 1983 claims fall outside the limitations period. *See Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992) (explaining how allowing discrimination claims to be raised when plaintiffs begin to suspect their employer's had illegal motives would "effectively eviscerate the time limits prescribed for filing such complaints").

### B.  Equitable Tolling is Not Appropriate

Garza's claim, however, may be subject to waiver, estoppel, or equitable tolling.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (acknowledging equitable tolling for Title VII claims); *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (applying Texas's equitable tolling principles to a section 1983 claim).[2]  The plaintiff bears the burden of providing justification for equitable tolling, and courts apply the doctrine sparingly.  *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011); *see also Myers*, 464 F. App'x at 349.  In employment discrimination cases, courts have regularly identified "three potential bases for equitable tolling: (1) the pendency of a suit between the same parties in the wrong forum; (2) the plaintiff's lack of awareness of the facts supporting his claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about his rights." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 880 (5th Cir. 2003).

At issue here is the second potential basis for tolling, which the Fifth Circuit has interpreted as requiring the employer to commit an affirmative act that misleads the employee and induces him to not act within the limitations period.  *Id.*  Garza argues that because the police department relied on "deceit, dishonesty and actual

---

[2] Because Texas's equitable tolling principles are not more favorable for Garza than the Title VII standards, both Garza's Title VII and section 1983 claims will be evaluated under the principles that follow.

fraud" in communicating the reasons he was terminated, he could not have understood the facts that developed his claim until the findings of the independent Police Department audit were released. Docket Entry No. 8 ¶ 2.    But under Fifth Circuit precedent, tolling is not appropriate in this case.

The Fifth Circuit has repeatedly held that an employer lying about the reason behind an adverse employment act is not the equivalent of an employer intentionally concealing a discriminatory intent.  *See Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 645 (5th Cir. 1988) ("[A]sserting that an employer is equitably estopped whenever it does not disclose a violation of the statute . . . would make the [limitations] period virtually meaningless."); *Harrison v. Ester Express Line*, 211 Fed. App'x. 261, 265 (5th Cir. 2006) (per curiam) (stating that a dispute between the parties regarding the motivation behind Plaintiff's termination "cannot be said to have concealed the facts relevant to [Plaintiff's] claim" as is required for equitable tolling).  In certain circumstances, courts have tolled the limitations period when an employer gives the plaintiff a false reason for the adverse action.  But in those cases, the plaintiff had no reason to suspect discriminatory motives on the part of the employer.  For instance, in *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975), the court found that the plaintiff, who was told she was laid off due to budget concerns, had no reason to investigate or suspect discrimination because the company had previously laid her off legitimately for the same reason.

*Id.* at 930.  The court also relied on the fact that the plaintiff did not find out until after the limitations period that she was replaced by a less qualified individual outside of her protected class.  *Id*. at 926, 930.  Similarly, in *Tucker v. United Parcel Serv.*, 657 F.2d 724 (5th Cir. 1981), the court held that seasonal black employees were not effectively put on notice when they were told they would not be recalled after the holiday period ended.  *Id.* at 726.  Again, the court relied on the fact that the released employees had no way to know that individuals outside their protected class had been retained or rehired because deciding not to keep a seasonal employee after the end of the holiday season is an "otherwise unexceptional decision."  *Id.* at 726–27.  In contrast, courts have held that when an employee is told they are fired "for cause" it gives the employee an opportunity to immediately look into the situation.  *See, e.g.*, *Blumberg*, 848 F.2d at 645.

Garza, by his own admission, states that his termination was suspicious in light of being awarded "Rookie Officer of the Year" in that same calendar year.  Docket Entry No. 1 ¶ 8.  He repeatedly took steps "over a period of days, weeks, months and eventually years" to investigate the real reason behind his firing.  *Id*.  ¶¶ 9, 16.  Defendants' refusal to provide Garza with supposedly secret information about his supposed policy violation would have only heightened his suspicions about the propriety of his termination.  Garza also alleges that the police force took actions that went against the directives in its own policy manual, further giving him

notice that things might not have been as they seemed.  *Id*. ¶ 15; *see Pacheco*, 966 F.2d at 907 (highlighting that a plaintiff in an organization with well established procedures governing disciplinary proceedings should be alerted to make inquiries when they are not followed).  While the audit on the police department brought to light facts that would have undoubtedly aided Garza in bringing a claim within the limitations period, "[i]t is to be expected that some relevant facts will come to light after the date of an employee's termination-one purpose of filing an administrative complaint is to uncover them."  *Id*. (quoting *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 203 (4th Cir. 1990)).

Garza failed to diligently inquire into his termination despite being told it was for cause under suspicious circumstances.  *See id*. (explaining that a plaintiff should make a "reasonable investigation in response to an adverse event").  Instead, he waited until 2012, six years after his termination, to bring suit. Garza's case does not constitute one of the rare instances when equitable tolling is appropriate.  *See Granger*, 636 F.3d at 712.

### IV.   CONCLUSION

For the reasons stated above, the Court concludes that the statute of limitations bars both of Garza's claims.  Accordingly, Defendant City of Clear Lake Shores's Rule 12(b)(6) Motion to Dismiss (Docket Entry No. 3) is **GRANTED**.  Garza's claims are **DISMISSED WITH PREJUDICE**.

**SIGNED** this 30th day of April, 2013.

_____
Gregg Costa
United States District Judge